JAMES L. HOOPER AND MELVIN J. KORDON *v.*
STATE OF MARYLAND

[No. 72, September Term, 1981.]

*Decided March 24, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE and DAVIDSON, JJ.

Alan I. Baron, with whom were *Frank, Bernstein, Conaway & Goldman, Courtland K. Townsend, Jr.* and *Mannes, Meyers, Nadonley, Townsend & O'Brien* for appellant Melvin J. Kordon and *James Robert Miller* and *Miller & Steinberg* for appellant James L. Hooper, on the brief, for appellants.

*Maureen O'Ferrall Gardner, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The petitioners James L. Hooper and Melvin J. Kordon were charged in six-count indictments with false pretenses. The crimes were allegedly committed over a six-year period. Each count in both indictments covered the events of an entire calendar year, with each count alleging that the defendant obtained funds at different times during the year from the State of Maryland "by certain false pretenses" through the delivery to the Maryland Medical Assistance Program of "certain claims for reimbursement for alleged office visits which claims were in truth and in fact false."

Upon the defendants' motion, the Circuit Court for Montgomery County dismissed the indictments on the ground that they were duplicitous. The State appealed, and the Court of Special Appeals reversed in an unreported opinion. This Court then granted the defendants' petition for a writ of certiorari.

At oral argument before us on December 2, 1981, counsel for the defendants began by informing the Court that, during the pendency of the appeal, the State had filed an information against each defendant charging the identical offenses involved in the present case. Each information contained 330 counts alleging false pretenses, with 47 of the counts charging offenses occurring in 1972, 64 counts in 1973, 42 counts in 1974, 67 counts in 1975, 84 counts in 1976 and 25 counts in 1977. Defendants' counsel represented that the trial under the new informations was scheduled to begin on December 14, 1981, and that the State had taken the position that it would move to "drop" the instant case when that trial commenced.

Before hearing defense counsel on the merits of the duplicity issue, we asked the Assistant Attorney General representing the State to address this procedural matter. The Assistant Attorney General began by saying that "the reason that the State at this point has not dropped this appeal is that we are now on a petition for a writ of certiorari which was granted to the other side." The State then represented that it was "going ahead with the trial" on the informations scheduled in twelve days and that, as soon as the trial began, the present prosecutions under the indictments would be dropped. In response to suggestions from the Court that an opinion handed down after the trial on the informations would be advisory, and that the State was in effect asking the Court to render an advisory opinion, the Assistant Attorney General answered that the State was "willing to dismiss." The State went on to say that it would "move to dismiss on the ground of mootness." The following colloquy then took place between different members of the Court and counsel:

"COURT [1]: Do you now make such a motion?

"ASSISTANT ATTORNEY GENERAL: I will make such a motion. Thank you.

"COURT: Mr. Baron and Mr. Miller [defense counsel], what do you want to do? We have no motion filed by you to do anything.

"DEFENSE COUNSEL: No, Your Honor, we don't. Frankly, we had felt that this is an important issue. And, frankly, researching the whole question of when it is and when it isn't duplicitous, if anybody can find a clear bright line in there, I'd sure like to trade places with them, because I can't find it. And, what we had hoped was that the — this whole pending information would be put in abeyance until we got a clear signal from this Court as to whether or not the charging — the original charging instrument in this case was good or bad.

"COURT: But there isn't any way you can object. ... The effect of what the State has done is to nol pros this case.

* * *

"DEFENSE COUNSEL: Well, so be it. But, we're pretty far down the road at this point, and it seems to me it was unseemly for the State —

"COURT: The State has a right to nol pros, to abandon this one and proceed on to another one.

"DEFENSE COUNSEL: What is unseemly is that they waited until now to do it. They should have dropped it, should have ... made the election way back.

"COURT: Even if it is unseemly, there's nothing we can do about it.

"DEFENSE COUNSEL: Unless the Court decides that what they're going to do is stay the

---

1. The word "Court" refers to the several members of this Court. Different questions were asked by different judges.

pending information until we've had to chance to argue.

"COURT: But the State has nol prossed the case.

"COURT: They have every right to do that.

\* \* \*

"COURT: Do you want to confer with [co-counsel] . . .?

\* \* \*

"DEFENSE COUNSEL: I've got a wonderful argument here on the issue of duplicity, if you'd like to hear it.

\* \* \*

"DEFENSE COUNSEL: Your honor, what I'm hearing from the Court is that we really don't have much choice. If they do have unfettered discretion to drop the case, and they have made such a motion, it seems to me the plug has been pulled. . . . This whole proceeding is nugatory. And, I can't really oppose the dropping of the charges against my client.

"COURT: Maybe you can bargain to get the first charging document back. You were in a better position with that.

"DEFENSE COUNSEL: No, I don't think so.

"COURT: Well, I'm not sure the first charging document, after what [the Assistant Attorney General] says, is any longer alive.

"DEFENSE COUNSEL: Well, it was alive until —

"COURT: I think it was alive until [the Assistant Attorney General] opened her mouth.

"DEFENSE COUNSEL: Right.

"COURT: I don't think it's alive any longer.

"DEFENSE COUNSEL: If that is the Court's position, as I said, I'm perfectly prepared to argue duplicity, but I don't want to waste the Court's time.

"COURT: I think you're [position is] well taken, what you've done. So we'll proceed to the next case."

Consequently, there was no oral argument on the duplicity issue.

Next in January 1982, the State filed in this Court a "Motion to Withdraw Motion To Dismiss Appeal." In that motion, the State recited that the trial on the informations was not held on December 14, 1981, because "no courtroom or judge was available, and both parties were informed that none would be available within the immediate future." According to the State, a new trial date has been scheduled for April 26, 1982, but because of certain pending motions to dismiss, the trial may be delayed beyond that date. The State represented that if the appeal in this case is "reinstate[d]," and if the State prevails, the present case might be ready for trial before the other case can be tried. The State concluded with the requests that this Court "permit it to withdraw its motion to dismiss the appeal," that this Court "reinstate the Appeal and set argument in this matter as soon as possible." The defendants subsequently filed an opposition to the State's motion.

In our view, the State's action during the December 2, 1981, hearing before this Court amounted to a nol pros of each indictment. The appeal became moot because the State decided to abandon the prosecutions on the indictments on December 2nd rather than wait until the commencement of the trial on the informations. Under the settled law of this State, when a charging document is unconditionally nol prossed, the prosecution under that particular charging document is finally terminated at that time. *State v. Moulden*, 292 Md. 666, 673, 441 A.2d 699, 702-703 (1982). Consequently, we shall deny the State's motion to withdraw its prior motion to dismiss its appeal, and we shall order that

the appeal be dismissed.

A nolle prosequi is simply the prosecution's abandonment of a charging document, count or part of a count. It is a " 'discontinuance of a prosecution by the authorized attorney' for the State," *Ward v. State,* 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981), quoting *Commonwealth v. Hart,* 149 Mass. 7, 8, 20 N.E. 310 (1889).

Furthermore, a nolle prosequi need not be couched in any particular language or take any specific form; it is the substance of the prosecution's action which controls.[2] *State v. Moulden, supra,* 292 Md. at 668, n. 2, 441 A.2d 699, 700, n. 2 (1982); *Knotts v. State,* 237 Md. 417, 419-420, 207 A.2d 100 (1965); *Stocker v. State,* 4 Md. App. 275, 279, 242 A.2d 578 (1968), *cert. denied* 395 U.S. 982, 89 S. Ct. 2142, 23 L.Ed.2d 770 (1969); *Holtz v. State,* 1 Md.App. 358, 361-362, 230 A.2d 117 (1967).

Consequently, an "election" not to prosecute a particular count has been deemed to be a nolle prosequi, *State v. Moulden, supra,* 292 Md. at 668. The State's motion to amend an indictment by deleting certain matter from two counts on the ground of duplicity was treated as a nolle prosequi of the offenses charged in the deleted material, *Knotts v. State, supra,* 237 Md. at 419-420. A motion by the prosecuting attorney to "dismiss" an indictment has been held to be a nolle prosequi, with the further holding that the dismissal could not be set aside by a subsequent order reinstating the indictment, *State v. Veterans of Foreign Wars, Post 1856,* 223 Iowa 1146, 274 N.W. 916 (1937). A paper filed by the prosecuting attorney called a "disclaimer" was deemed to be a nolle prosequi in *Commonwealth v. Wakelin,* 230 Mass. 567, 571-572, 120 N.E. 209 (1918), with the court pointing to "the substance of what was undertaken." The Supreme Court of Indiana in *Kistler v. State,* 64 Ind. 371 (1878), held that a motion by the

---

**2.** However, Maryland Rule 782 does require that a nolle prosequi be made in open court and that the prosecuting attorney set forth the reasons for his action.

prosecuting attorney to "strike the case from the docket" amounted to a nolle prosequi and that, therefore, the trial court erred in later granting the State's motion to reinstate the action. These cases, as well as many others, make it clear that the substance of the prosecution's action in light of circumstances, and not the particular words used, determine whether the action amounts to a nol pros.

Turning to the case at bar, the Assistant Attorney General's action before this Court on December 2, 1981, in light of the circumstances, was in substance a nol pros of the two indictments.[3]

A criminal appeal may, of course, become moot for diverse reasons, and a motion by the State to dismiss a criminal appeal on the ground of mootness does not necessarily mean that the prosecution has been abandoned. However, on December 2, 1981, only two possible reasons were suggested as to why the present appeal would become moot. First, upon the attachment of jeopardy at the trial on the two informations, subsequent prosecution on these indictments would be precluded by double jeopardy principles, and thus this case would then become moot. Second, if the State decided not to wait until the trial on the informations, but were to abandon the prosecution on the indictments before that time, the case would become moot because of the abandonment or nol pros.

On December 2, 1981, after initial questioning by members of the Court, the State chose the second path. The Assistant Attorney General decided not to wait until the

---

3. We have recognized that a case may be nol prossed while it is pending in an appellate court, and, if jeopardy had attached at the trial, the nol pros on appeal will ordinarily operate as an acquittal of the underlying charges because of double jeopardy principles. Friend v. State, 175 Md. 352, 2 A.2d 430 (1938). *See also* the discussion in Ward v. State, 290 Md. 76, 89-92, 427 A.2d 1008 (1981).

Although our cases have not discussed the issue, it would seem that a nol pros of a case pending on appeal should normally be done in the appellate court in which the appeal is pending at the time. The record in the *Friend* case discloses that the nolle prosequi there was filed in the appellate court. Record in Friend v. State, No. 21, Oct. Term. 1938, p. 12. When a case is pending in the Court of Special Appeals or in this Court, the Attorney General, rather than the State's Attorney, ordinarily has the authority and responsibility to represent the State. Maryland Constitution, Art. V, § 3.

case became moot on double jeopardy grounds. Rather, the State abandoned the prosecution in our Court during the hearing, and then moved to dismiss the appeal for mootness because the prosecutions had just been abandoned. As of December 2, 1981, the appeal could become moot only because the prosecution had been abandoned. Moreover, as the transcript of the hearing demonstrates, the members of this Court and defense counsel understood and treated the State's action as a nolle prosequi, and the Assistant Attorney General said nothing to dispel that understanding.

Recently in *State v. Moulden, supra,* 292 Md. at 673, we reviewed the effect of a nolle prosequi under Maryland law:

> "In Maryland, unlike some other jurisdictions, we have consistently drawn a sharp distinction between a nolle prosequi and a stet. *Barrett v. State,* 155 Md. 636, 638, 142 A. 96 (1928); *State v. Morgan,* 33 Md. 44, 46 (1870); *Brady v. State,* 36 Md.App. 283, 290, 374 A.2d 613 (1977); *State v. Jones,* 18 Md.App. 11, 33-37, 305 A.2d 177 (1973); Maryland Rule 782. Although a stet permits an accused to be proceeded against at a later date under the same charging document, a nolle prosequi does not. The nol pros of a charging document or of a count is 'a final disposition' of the charging document or count; 'there can be no further prosecution under' the nol prossed charging document or count; the matter is 'terminated' at that time; and the accused may be proceeded against for the same offense only under a new or different charging document or count. *Barrett v. State, supra,* 155 Md. at 637-638. As we pointed out in *Bynum v. State,* 277 Md. 703, 705, 357 A.2d 339, *cert. denied,* 429 U.S. 899, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976), '[w]here a *nolle prosequi* is entered before jeopardy attaches, the state is ... precluded from further prosecution under the indictment or count so dismissed.' The nol pros of one count in a multi-count indictment '"leaves the prosecution just as though no such count had ever been inserted in the indictment,"'

> *Ward v. State,* 290 Md. 76, 84, 427 A.2d 1008 (1981), quoting from *Dealy v. United States,* 152 U.S. 539, 542, 14 S.Ct. 680, 681, 38 L.Ed. 545 (1894)."

To permit the State to withdraw a nolle prosequi, or have a nol prossed indictment reinstated, would be flatly inconsistent with the nature of a nolle prosequi under Maryland law.[4]

> *Motion by the respondent to withdraw motion to dismiss denied. Judgment of the Court of Special Appeals vacated, and case remanded to that Court with directions to dismiss the appeal. Costs to be paid by Montgomery County.*

---

4. In some other jurisdictions, either by statute or court decision, a nolle prosequi is treated more like a stet, and it may be withdrawn by the prosecution. Some of the jurisdictions permit it to be withdrawn at any time, whereas others permit it to be withdrawn only with the consent of the court and during a particular period such as the term of court. For a discussion and list of these cases, see Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). *See also* Judge Moylan's discussion of this subject for the court in State v. Jones, 18 Md.App. 11, 33-37, 305 A.2d 177 (1973), pointing out the difference between jurisdictions treating a nolle prosequi as final and those permitting a nolle prosequi to be withdrawn.