572 A.2d 544

**STATE of Maryland**

v.

**Alex Ray BAILEY.**

**No. 75, Sept. Term, 1989.**

Court of Appeals of Maryland.

April 23, 1990.

394

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for petitioner.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

## I

In all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial....

U.S. Const. amend. VI. *Klopfer v. North Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967), established that the right to a speedy trial is "fundamental," and is "imposed by the Due Process Clause of the Fourteenth Amendment on the States." *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 2184, 33 L.Ed.2d 101 (1972). The right to a speedy trial is to be distinguished "from any of the other rights enshrined in the [United States] Constitution for the protection of the accused." *Id.* at 519, 92 S.Ct. at 2186. It is generically different in that there is a societal interest in providing a speedy trial "which exists separately from, and at times in opposition to, the interests of the accused." *Id.* It is different in that "deprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic." *Id.* at 521, 92 S.Ct. at 2187. "[P]erhaps most importantly, the right to speedy trial is a more vague concept than other procedural rights." *Id.* The nature of the speedy trial right, "amorphous" and "slippery," *id.* at 522, 92 S.Ct. at 2188,

make[s] it impossible to pinpoint a precise time in the process when the right must be asserted or waived, but that fact does not argue for placing the burden of protecting the right solely on defendants. A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. Moreover, for the reasons earlier expressed, society has a particular interest in bringing

swift prosecutions, and society's representatives are the ones who should protect that interest.

*Id.* at 527, 92 S.Ct. at 2190 (footnotes omitted). And it is also

impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate. As a consequence, there is no fixed point in the criminal process when the State can put the defendant to the choice of either exercising or waiving the right to a speedy trial.

*Id.* at 521, 92 S.Ct. at 2187 (footnote omitted). Therefore, as *Barker* said at 522 "any inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case."

The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

*Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905), quoted in *Barker* 407 U.S. at 522, 92 S.Ct. at 2187.

In *Barker*, the Supreme Court, for the first time, attempted to set out the criteria by which a speedy trial right is to be judged. 407 U.S. at 516, 92 S.Ct. at 2185. In doing so, the Court rejected two rigid approaches—a "fixed time period," that is, a defendant must be offered a trial within a specified time period, and a "demand-waiver" rule under which consideration of the right is restricted to those cases in which the accused has demanded a speedy trial. *Id.* at 523–528, 92 S.Ct. at 2188–2191. The approach the Court accepted was "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2192 (footnote omitted). "A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis." *Id.*

## II

### A

The acuteness of the Supreme Court's observations concerning the character and quality of the speedy trial right are brought home by the case at hand. It calls upon us to determine whether constitutional rights were offended by a delay in bringing Alex Ray Bailey to trial in a criminal prosecution in the Circuit Court for Montgomery County. The circuit court concluded that the rights were not offended. The Court of Special Appeals held that they were. It reversed the judgment entered upon Bailey's conviction by a jury and the sentence imposed by the nisi prius court. *Bailey v. State*, No. 737, September Term, 1988, filed 17 April 1989, unreported. The State filed a petition for the issuance of a writ of certiorari. Bailey filed a conditional cross-petition. We granted the petitions and ordered the case certified to us.

### B

The Maryland adventure in the saga of the criminal career of Bailey began on 14 February 1986 when he was arrested in Montgomery County, Maryland, and charged with various violations of the Controlled Dangerous Substances Act. At the time, he fancied the name of John Vron, one of his many aliases,[1] and he was so booked and indicted. The indictment, handed down by the Grand Jury on 20 March 1986, charged him with distribution of cocaine, possession with intent to distribute cocaine, and conspiracy to distribute cocaine.[2] On 6 June 1986, the State nol prossed the indictment. On 28 May 1987, the Grand Jury

---

1. The State subsequently discovered that Bailey (if that is his true name) was also known as Beetle Bailey, Alex Bailey, Ruben Byrum, John Dixon, William Lou Hudson, James Arthur Vron, James Vron, Ruben Joe Byrum, Joe Byrum, Alex Charles Bailey, and Bucky Bailey.

2. A copy of the 20 March 1986 indictment is not included in the record submitted to us.

returned another indictment. It presented that Alex Ray Bailey, also known under the various names listed in note 1, *supra,*

on or about between February 9, 1986 and February 14, 1986, did unlawfully bring into this State a controlled dangerous substance of Schedule II, to wit: cocaine, in an amount of 28 grams or greater, in violation of Article 27, Section 286A(a)(2) of the Annotated Code of Maryland ... [1st count; and]

on or about between the same dates

in Montgomery County, Maryland, unlawfully did possess a certain controlled dangerous substance of Schedule II, to wit: cocaine, in sufficient quantity to reasonably indicate under all circumstances an intent to distribute said controlled dangerous substance, in violation of Article 27, Section 286(a)(1) of the Annotated Code of Maryland ... [2nd count].

On 23 February 1988, two years and nine days after he was arrested, Bailey was brought to trial, on the second indictment, over his protest, in the Circuit Court for Montgomery County. On 17 February 1988, he had made known his objection to being tried by filing a motion to dismiss the indictment for "lack of a speedy trial." The motion was heard and denied two days later. Trial proceeded before a jury. Bailey was found not guilty under the first count and guilty under the second count. The direct appeal and the grant of review by this Court followed.

The events which occurred during the interval between Bailey's arrest and his trial are detailed in a "Chronology" prepared by the State and appended to its answer to Bailey's motion to dismiss.[3] It shows:

---

**3.** At the hearing on the motion, defense counsel said:

The chronology that [the prosecutor] has prepared has been reviewed by me. With the exception of some of the inferential conclusions that he makes from what happened in there, I am in agreement that the dates are in fact substantially correct.

February 14, 1986—Defendant arrested in Montgomery County, Maryland as James Vron. Held on District Court charging document 012547D3 charging Distribution of Cocaine, Possession with Intent to Distribute Cocaine, Possession of Cocaine, and Conspiracy to Distribute Cocaine.

March 20, 1986—Defendant, as James Vron, indicted in Circuit Court for Montgomery County (# 41284). Charged with Distribution of Cocaine, Possession with Intent to Distribute Cocaine, and Conspiracy to Distribute Cocaine.

May, 1986—State learns of trial in absentia conviction of defendant as Alex Ray Bailey in South Carolina.

The chronology sets out the details of the South Carolina conviction.

September 5, 1984—Defendant (as Alex Bailey) arrested and charged with Trafficking in Cocaine in Charleston County, South Carolina. Held on $75,000 bond.

October 12, 1984—Magistrates Court, Charleston County, reduces bond to one thousand dollars ($1,000.00).

December 10, 1984—Defendant indicted. Count One—Possession with Intent to Distribute Valium and Count Two—Trafficking in Cocaine. Charges filed in Court of General Sessions, Charleston County, South Carolina.

January 14, 1985—Defendant not present at court. Bench Warrant issued from Court of General Sessions, Charleston County, South Carolina.

April 8, 1985—Defendant tried in absentia (TIA). Guilty on both counts. Sentence of ten years imposed.

Shortly after the State became aware of Bailey's South Carolina criminal activities and their consequences, the Assistant State's Attorney for Montgomery County wrote defense counsel. The chronology continues:

June 3, 1986—State's Attorney's Office advised Phil Armstrong, Esquire [Defense Counsel], via letter of intent

to nolle charges in Maryland in order to have defendant first face earlier charges in South Carolina.

The letter of 3 June 1986 from the Assistant State's Attorney to defense counsel read:

I have recently been informed by the Solicitor's Office in Charleston, South Carolina, that your client, Alex Ray Bailey, was charged with trafficking cocaine there in 1984, and in fact was convicted in September, 1985 *in absentia*. Warrants based upon this have been on file at the Montgomery County Detention Center. In order to facilitate the South Carolina authorities in their efforts to enroll and execute their sentence, I have decided to enter a nolle prosequi to criminal number 41284. Your client will then be held under the South Carolina detainer and extradited. The State of Maryland does not intend to abandon its prosecution of Mr. Bailey, but we do feel that it would be appropriate for your client to personally answer these earlier charges in South Carolina and, if sentenced, to start serving his sentence there. I feel that that matter should be finally settled prior to the Montgomery County prosecution for the recent incident of February, 1986. We would then bring your client back to Montgomery County under the Interstate Agreement on Detainers.

I will enter the nolle prosequi on Friday, June 6, 1986.

The nolle prosequi to indictment number 41284 was entered as the State said it would be. The 9 June 1986 entry in the chronology reads:

June 9, 1986—Letter to State's Attorney's Office from Philip Armstrong objecting to procedure.

Defense counsel made known his objection to the State's actions. His letter of 9 June informed the Assistant State's Attorney:

I have read your letter of June 3, 1986 with interest. As I'm sure you are aware, Mr. Bailey demanded a speedy trial both in the District Court and the Circuit

Court.[4] The State of Maryland, having obtained jurisdiction over him, is subject to the running of the time for his Constitutional right to a speedy trial if it voluntarily elects to terminate the prosecution against him in order to facilitate a law enforcement purpose in another jurisdiction.

If the State is desirous of prosecuting Mr. Bailey, it is his position that the State must do so within the perimeters of his rights to due process of law, and we wish to have the record clearly reflect that he objects to the entry of any nolle prosequi in this matter and reiterates his previously requested demand for a speedy trial.

Thereafter, according to the chronology,

June, 1986—Defendant returned to South Carolina.[5]

October 16, 1986—Defendant appears in Charleston County Court on bench Warrant issued on January 14, 1985.

October 22, 1986—Sentence of ten years confinement imposed in South Carolina case. Motion to Reduce sentence filed immediately.

Back in Maryland, the saga of Bailey's criminal career, as told in the chronology, continued.

May 28, 1987—Defendant indicted in Montgomery County, Maryland, on Importation of Cocaine and Possession with Intent to Distribute. Bench Warrant issued. Criminal number 46579.

---

**4.** There is no dispute about Bailey's preservation of an assertion of his right to a speedy trial. As defense counsel told the judge at the hearing on the motion to dismiss:

We are all in agreement that from day one, literally, from the date that I entered my appearance in the District Court he has iterated, reiterated, and reiterated his demand for a speedy trial.

**5.** It appears that Bailey was not returned to South Carolina on the mere whim of the Montgomery County Assistant State's Attorney. The State asserts in its brief that Bailey was sent back

pursuant to a request filed by the South Carolina government in accordance with the Interstate Agreement on Detainers....

Bailey does not dispute this assertion.

June 10, 1987—Detainer sent to South Carolina Department of Corrections from Montgomery County Sheriff's on new charges.

July 1, 1987—State files request under Interstate Agreement on Detainers to obtain Alex Ray Bailey for trial in Maryland. Pick-up date of August 18, 1987 set.

July, 1987—Trial date of September 24, 1987 set.

August 12, 1987—Defendant fights transfer to Maryland. Pick-up date of August 18, 1987 cancelled. Governor's hearing set.

September 24, 1987—Trial date on criminal number 46579. Defendant still in South Carolina fighting extradition.

November 3, 1987—Governor's approval for transfer to Maryland. Pick-up date of November 24, 1987 set.

November 25, 1987—Defendant appears in Montgomery County. Held without bond. Trial date of December 8, 1987.

December 1, 1987—Trial date of December 8, 1987, conflicts with defense attorney's calendar. Court resets case for February 18, 1988.

February 17, 1988—Motion to Dismiss for Lack of Speedy Trial filed by defense.

A hearing on the motion was held two days later. The motion was denied and trial proceeded. The jury rendered a verdict of not guilty on the importation charge (first count) and a verdict of guilty on the possession charge (second count).

## C

Here, the facts as narrated in the chronology are not in dispute and were before the judge at the hearing on the motion to dismiss.

The State's memorandum in response to Bailey's motion to dismiss for lack of a speedy trial set out reasons for the delay. They were

> to allow the State to develop an enhanced case of Impor-
> tation of Controlled Dangerous Substance against the
> defendant, *and* to allow the South Carolina System to
> enroll the conviction in absentia on his 1984 arrest and to
> allow the defendant to start serving his tenure as a South
> Carolina prisoner.

(Emphasis in original). "This crystallizes," the State assert-
ed, "the prior record of the defendant which is crucial to
possible sentencing of the defendant." The State explained:

> It was not until May, 1987, that the State could get
> enough evidence, via the testimony of a co-defendant
> [William Larry Moore], to request an Importation of
> Controlled Dangerous Substance indictment.

"These reasons," the State averred, "are entirely proper
and consistent with the State's Attorney's function." "Fur-
thermore," the State reminded, "the State warned the de-
fense of its intentions."

At the hearing on the motion, the Assistant State's Attor-
ney played the same theme song. He declared that it was
"a prosecutorial function, to size up the strength of a case,
and then do what it thinks is best to obtain a conviction."
"[Q]uite frankly," he admitted, "I wanted to shore up my
case against this man. I, in fact, did that." During the
time between the nol pros and the reindictment "what
Maryland was doing was attempting to enhance and develop
a case against [Bailey]." The prosecutor conceded: "There
is no question that was my intent and motive." During the
eleven months during which there was no outstanding Ma-
ryland charge against Bailey, the prosecutor believed that
Bailey "was legitimately subject to further investigation."
During that period the prosecutor was attempting to per-
suade a co-defendant to testify for the State against Bailey.
But, "[w]hen that deal was cut with the co-defendant and he
testified [before the Grand Jury] in May of 1987, there's an
indictment, and immediate efforts were taken to secure
[Bailey's] presence back here." The Assistant State's At-
torney disavowed that he was seeking a tactical advantage.
It was not a case where the State used a nol pros to delay

prosecution until an alibi witness died, or to "duck a judge" or to gain a continuance. "We [were] putting together a stronger case." Defense counsel accepted that the prosecutor "speaks the truth when he says that he dropped [the case] because he wanted to turn a co-defendant, and because he wanted to firm up the status of the South Carolina conviction." Defense counsel argued:

> The question then becomes whether that action by the State is bad faith, vis-a-vis Mr. Bailey. I mean, he may have done it with a clear conscience. He may have done it thinking that it was the right thing to do. But whether that is good faith as a matter of law, or not, I am not willing to concede.

He thought that the indictment was nol prossed "for the sole purpose of giving [the State] a tactical advantage, which ... is bad faith as a legal matter."

The hearing court said that "[t]here seems to be no factual dispute as to the State's reasons for the nol pros." The reasons for the delay, the judge indicated, were as the State set out in its memorandum in response to the motion to dismiss, namely,

> to allow the State to develop an enhanced case of importation of controlled dangerous substance against the defendant, and allow South Carolina to enroll a conviction in absentia on his 1984 arrest, and to allow the defendant to start serving his tenure as a South Carolina prisoner....

> If we compute the trial date from May 28th, 1987, the most recent indictment, there does not appear ... to be any constitutional dimension to any delay that has been occasioned.

If, however, the trial date is computed back to the date of the original indictment, the court believed that,

> even though [the indictment was nol prossed] with the avowed purpose of gaining some advantage for the prosecution, it does not seem to have been improperly motivated in any way.

It seemed to the court that "it would not constitute bad faith." The court concluded: "We are therefore not dealing with a denial of speedy trial." The court ruled:

Given all factors considered and acknowledging that it would be an appropriate case for the Appellate Court to review, the court will deny the motion to dismiss on the grounds of speedy trial.

The Court of Special Appeals, reversing the circuit court, deemed three time periods to be significant:

1. From February 14, 1986, when the appellant was arrested for the possession of cocaine, until June 6, 1986, when the indictment that followed shortly after his arrest was *nolle prossed.* This time period consumed slightly less than four months.

2. From June 6, 1986, when the original indictment was *nolle prossed,* until May 28, 1987, when the appellant was reindicted for possession of cocaine and indicted for the first time for importing cocaine into Maryland. This time period was just a few days short of one year.

3. From May 28, 1987, when the reindictment for possession was handed down, until February 19, 1988, when the appellant's motion to dismiss the charges was heard and denied. This time period was slightly less than nine months.

*Bailey v. State, supra,* slip opinion at 1–2. The intermediate appellate court opined that the speedy trial issue "hinges on the nolle prosequi...." *Id.* at 3. The court observed that if the nolle prosequi were "a legitimate termination" of the then pending prosecution, Bailey would lose. It explained:

The time period of less than nine months was not particularly inordinate in terms of length of delay. The appellant, rather than demanding a speedy trial during that period, was indeed fighting extradition from South Carolina. The reasons for delay, without unduly anguishing over the details, seem to be more attributable to the appellant than to the State. There was, moreover, no showing of special prejudice but only the presumptive

prejudice attendant upon the delay itself. The condition precedent for this analysis, however, is not established. *Id.*, slip opinion at 2. If, however, the nolle prosequi were improper, so that the delay ran from the beginning of the first time period without interruption through the end of the third time period, the State would lose.

In that event, the length of delay will be slightly in excess of two years, a time period well beyond the ordinary. In terms of demand for a speedy trial, this time period embraces the appellant's demands for a speedy trial of March 18; April 2; and June 9, 1986. In terms of prejudice, the presumptive prejudice attendant upon a two-year delay is proportionately far more than the presumptive prejudice attendant upon a nine-month delay. Most significantly, in terms of responsibility for the delay, the State would bear sole responsibility for the approximately one-year period between the *nolle prosequi* and the reindictment.

*Id.*, slip opinion at 2–3. The Court of Special Appeals concluded that the entry of the nol pros was improper. *Id.* at 6. It believed that in seeking to delay the trial, "the State was attempting to gain two tactical advantages—1) the benefit of enhanced sentencing and 2) additional charges." *Id.* at 4. The court observed:

This is not to suggest that the State may not delay a trial in order to obtain a tactical advantage. It may, but if it does, it must pay a calculated price.

The price is that such delay will count against the State in a speedy trial analysis. If a short delay will gain a significant advantage, it may well be worth the State's gamble. A lengthy delay for tactical advantage, however, will frequently be fatal to the State's case. When the State is getting little or nothing in return, it is quite obviously a bad gamble.

*Id.* The court declared:

The *nolle prosequi* here cannot be justified on any ground that the initial charges had to be terminated because of the insufficiency of proof with which to move

forward. The conviction under review is for the possession of cocaine with intent to distribute. The evidence supporting the conviction and the evidence supporting the reindictment is the same evidence that supported the initial indictment. The *nolle prosequi* here was only for purposes of tactical delay, not for purposes of building a *prima facie* case.

*Id.* at 5–6. The court recognized that

Even after determining that the entire two-year period represents the length of delay, we still must consider the legitimacy of the State's reasons for causing one year of this delay. The argument they pose in terms of enhanced punishment collapses into nothing. Without suggesting for a moment that a one-year delay could ever be justified in order to subject a defendant to enhanced punishment, it is unnecessary even to address that issue.

*Id.* at 6. The Court of Special Appeals acknowledged that "[t]he fact that the conviction was in absentia certainly raises some serious doubts...." *Id.* at 6. But the court pooh-poohed the suggestion that it was necessary to " 'enroll the conviction' or 'perfect' it or 'crystallize' the prior record...." *Id.*[6] The court noted:

To convict a narcotics offender in Maryland of being a repeat offender under the provisions of Md. Ann. Code Art. 27, § 286(c)(1) or § 293, it is not required to show a prior term of confinement or even the imposition of a sentence. The prior conviction standing alone is sufficient. Any rationale for the *nolle prosequi* in terms of furthering the chances for enhanced punishment, therefore, evaporates into thin air.

*Id.* at 6–7. With respect to the 11 months it took the State to persuade Moore to testify against Bailey, the court said:

---

**6.** In any event, when Bailey was returned to South Carolina (see note 5, *supra* ) and appeared in the court in that state in October 1986, a ten-year sentence was imposed which he began serving. This appears to have satisfied all concerned as to the legality of those judgments.

Again, without suggesting that the State could ever justify an 11-month delay to obtain an additional witness, it is unnecessary to address that issue.  The State did not need William Larry Moore to prove that the appellant possessed cocaine.  On February 14, 1986, the police officers who executed a search warrant and found the appellant in close proximity to the recovered drugs were sufficient for that purpose.

Moore was necessary only for the importation case. The State has given no reason why the trial of the possession charge could not have proceeded during the 11-month period when there was no importation charge and when there might never have been one.  The physical evidence and the police testimony bearing on the possession charge would have been of little more than doubtful relevance on the trial of the importation charge.  Evidence about the appellant's flying to Florida on February 10, moreover, would have been of doubtful relevance on the possession charge of February 14.  Even if there had been justification for consolidating the trial of the two charges had both cases been filed and ready to go, the reasons of economy that justify the ordinary consolidation are not so compelling as to excuse a one-year delay of a pending criminal case.

*Id.* at 7-8.

Two questions with respect to the speedy trial right are presented in the State's petition for certiorari:

1.  Did the Court of Special Appeals err in concluding that, for purposes of determining Bailey's claim of denial of his constitutional right to a speedy trial, the relevant period should be measured from the first, and subsequently dismissed charges brought by the State, instead of the second indictment, upon which Bailey was actually tried?

2.  Even if the dismissal of the previous indictment did not toll the relevant period for speedy trial purposes, was Bailey denied his right to a speedy trial?

Our first concern is what criteria are we to apply when we make our independent constitutional appraisal.

## III

As we have seen, *supra,* the approach to a determination of a speedy trial denial which the Supreme Court adopted was a balancing test. 407 U.S. at 530, 92 S.Ct. at 2192. The Court conceded, however,

> We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

*Id.* (footnote omitted). We have applied these four factors in resolving speedy trial cases before us. *See Wilson v. State,* 281 Md. 640, 644, 382 A.2d 1053, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978); *Jones v. State,* 279 Md. 1, 6, 367 A.2d 1 (1976), *cert denied,* 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977); *Erbe v. State,* 276 Md. 541, 546–547, 350 A.2d 640 (1976); *Smith v. State,* 276 Md. 521, 527–528, 350 A.2d 628 (1976); *Epps v. State,* 276 Md. 96, 105–106, 345 A.2d 62 (1975).

### The Defendant's Assertion of His Right

The assertion by Bailey of his right to a speedy trial is not in dispute. *See* footnote 4, *supra.*

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, *and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences.* The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being

deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker* 407 U.S. at 531–532, 92 S.Ct. at 2192–2193 (emphasis added).

### Length of Delay

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.

*Barker,* 407 U.S. at 530, 92 S.Ct. at 2192. Of course, the length of the delay cannot be computed unless it is known when the period of delay starts. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), provided this criterion. The speedy trial clock starts ticking when a person is arrested or when a formal charge is filed against him. *Id.* at 313, 92 S.Ct. at 459. *See State v. Gee,* 298 Md. at 568, 471 A.2d 712. The Supreme Court has consistently adhered to this view. *Gee* at 568, 471 A.2d 712 and cases therein cited at 568–569. In *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, *reh. denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977), the Court expressly affirmed the *Marion* teaching. It observed that the Court's

analysis of the language, history, and purposes of the [speedy trial] Clause persuaded [it] that only "a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge ... engage the particular protections" of that provision.

*Lovasco,* 431 U.S. at 788–789, 97 S.Ct. at 2047–2048, quoting *Marion,* 404 U.S. at 320, 92 S.Ct. at 463. So it is clear that "[u]pon the intervention of an arrest or a formal charge the Sixth Amendment speedy trial right is invoked." *Gee,* 298 Md. at 569, 471 A.2d 712.

In its discussion of the length of the delay, the Supreme Court pointed out:

[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke ... an inquiry [into the other factors that go into the balance] is necessarily dependent upon the peculiar circumstances of the case.

*Barker*, 407 U.S. at 530–531, 92 S.Ct. at 2192 (footnote omitted). The Court pointed out: "To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than a serious, complex conspiracy charge." *Id.* at 531, 92 S.Ct. at 2192. Here, the nature of the charges, in themselves, do not justify the lapse of two years from arrest to trial. The delay is of constitutional dimension and, therefore, provokes inquiry into the other factors that are balanced in the determination whether the State has overcome the presumption of prejudice that arises from a delay of that length.

### The Reason for the Delay

■ The ostensible cause of the delay of almost a year was the entry of the nolle prosequi. Md. Rule 4–247(a) provides in pertinent part:

The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court. A statement of the reasons for entering a nolle prosequi shall be made a part of the record.

"A nolle prosequi is simply the prosecution's abandonment of a charging document, count or part of a count." *Hooper v. State*, 293 Md. 162, 168, 443 A.2d 86 (1982) (footnote and citations omitted). *See State v. Moulden*, 292 Md. 666, 673, 441 A.2d 699 (1982).

The entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent.

*Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008 (1981) (citations omitted). We believe that the entry of the nolle prosequi here was within the general rule. The nol pros here did not denigrate a fair trial, as it did in *Hook v. State*,

315 Md. 25, 34–37, 553 A.2d 233 (1989), by encroaching on the function of the jury, taking away from the jurors that which the defendant was entitled to have them consider. Here, the discretion of the prosecutor to enter a nol pros remained unfettered, *but* he ran the risk that its entry might result in denial of a speedy trial. So even if the prosecutor had the right to enter the nol pros, the reasons why he exercised the right may be significant.

> Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531, 92 S.Ct. at 2192 (footnote omitted). We said in *Jones v. State*, 279 Md. at 6–7, 367 A.2d 1:

> [A] continuum exists whereby a deliberate attempt to hamper the defense would be weighed most heavily against the State, a prolongation due to the negligence of the State would be weighed less heavily against it, a delay caused by a missing witness might be a neutral reason chargeable to neither party, and a delay attributable solely to the defendant himself would not be used to support the conclusion that he was denied a speedy trial.

### Prejudice to the Defendant

The Supreme Court discussed the fourth factor—prejudice to the defendant—in *Barker* at 532, 92 S.Ct. at 2193:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration;

(ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

(footnote omitted). The Court pointed out the disadvantages for the accused who cannot obtain his release.

The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Id.* at 532–533, 92 S.Ct. at 2193 (footnotes omitted). The Court declared that of the three interests

the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.* at 532, 92 S.Ct. at 2193.

The Court recognized "[t]he difficulty of the task of balancing [the four] factors...." *Id.* at 533, 92 S.Ct. at 2193. And it warned:

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with

such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* (footnote omitted). *See Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); *Brady v. State,* 288 Md. 61, 66–67, 415 A.2d 1126 (1980). In *Jones* we explicated the delicate and imprecise balancing of reasons for the delay:

While we must scrutinize the entire interval between arrest and trial, and attempt to ascribe reasons for particular delays, it is not possible or even desirable to do so with mathematical precision; we will not count up the time chargeable to the State, that chargeable to the defendant, and those delays attributable to neutral reasons, multiply the number of days or months by a parameter assigned for each particular reason and then dismiss the indictment if the defendant ends up with the lower tally. Instead, delays must be examined in the context in which they arise and therefore a lengthy uninterrupted period chargeable to one side will generally be of greater consequence than an identical number of days accumulating in a piecemeal fashion over a long span of time.

279 Md. at 7, 367 A.2d 1.

## IV

### A

Common to all speedy trial cases decided by the Supreme Court and this Court is the recognition that the speedy trial right is unique, that it is indeed "amorphous" and "slippery," that it is impossible to determine with precision when the right has been denied, and that the balancing test adopted by the Supreme Court is difficult to apply, no one factor being dispositive. All the cases empha-

size that in the determination of the speedy trial question, each case rests on its own facts. The determination must be made upon an overall view of the circumstances peculiar to each particular case, keeping in mind not only the rights of the defendant but also the interests of society.

It is clear that the Supreme Court envisioned that the reviewing court's constitutional appraisal, independent of that of the trial judge, be practical, not illusionary, realistic, not theoretical, and tightly prescribed, not reaching beyond the peculiar facts of the particular case.

## B

Our independent constitutional appraisal in the light of the facts in the case at hand constrains us to conclude that Bailey was not denied the speedy trial guaranteed by the Constitution. In our assessment of prejudice to Bailey, in the light of his interests which the speedy trial right was designed to protect, we assume, *arguendo*, the view most favorable to Bailey—that the entire two year nine day delay was chargeable to the State. A delay of this length is "presumptively prejudicial," thereby triggering the balancing test. *Barker,* 407 U.S. at 529, 92 S.Ct. at 2191. As a delay of constitutional dimension, the presumption of prejudice always remains a factor to be weighed in the balance, because no one circumstance, such as the lack of actual prejudice, is controlling in deciding whether the defendant has been denied a speedy trial. All pertinent factors, including the presumption of prejudice, must be considered. *Brady v. State,* 288 Md. 61, 66, 415 A.2d 1126 (1980) (*Brady I*). *Moore v. Arizona,* 414 U.S. at 26, 94 S.Ct. at 189, made clear that *Barker* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial. *See Brady I* 288 Md. at 66, 415 A.2d 1126, and cases therein cited at 66–67. In sum, there is "no room for [a] 'single factor' approach" in a speedy trial determination. *Brady I* at 67, 415 A.2d 1126.

In *Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981) (*Brady II*), we emphasized the role to be played in speedy trial cases by the other factors courts have stressed as important in the balancing test. *Id.* at 263, 434 A.2d 574. We observed:

> A problem peculiar to the *Barker* test is its use of the terms *presumption of prejudice* and *actual prejudice.* When there has been a lengthy delay, one of constitutional dimension, then a presumption arises that the defendant has been deprived of his right to a speedy trial.

*Id.* at 266, 434 A.2d 574 (emphasis in original). We explained:

> Once this presumption asserts itself, a balancing test must be employed which involves a weighing of four factors, one of which is actual prejudice.

*Id.* And, we declared:

> Actual prejudice involves a consideration of three interests the speedy trial right is meant to protect. Whatever importance it assumes in the final outcome is a function of the facts of the particular case.

*Id.*

### (1)

#### *Oppressive Pretrial Incarceration*

■ The period from Bailey's arrest to his return to South Carolina was only about four months, not an inordinate length of time for the State to present the case to the Grand Jury and the return of an indictment. Prejudice during this period of incarceration was minimal, if prejudice at all. Bailey's incarceration while in the hands of the authorities in South Carolina was not oppressive as far as Maryland was concerned. He was incarcerated in South Carolina because he had been convicted of the commission of a crime in that jurisdiction. Furthermore, Bailey's incarceration in South Carolina was prolonged about six months because he was resisting extradition to Maryland, clear indication that at that time he did not desire a speedy trial.

Thus, we see no prejudice attributable to Maryland arising from the incarceration in South Carolina. Bailey was incarcerated in Maryland from about three months after his return until his trial. The State had set a date to try him about two weeks after his return, but trial was postponed at the request of defense counsel. Trial was had promptly after the disposition of Bailey's motion to dismiss the indictment.

Defense counsel suggested at the hearing on the motion to dismiss that Bailey was prejudiced during his incarceration in South Carolina because the detainer placed on him at Maryland's request prevented him from enjoying a work release program and kept him in a "lockdown status." This suggestion was speculative, not proved, and, in any event, covered a period of less than six months (between the request for the detainer and Bailey's return to Maryland), all but two months of which was caused by Bailey's resistance to extradition. The short of it is that there was little incarceration for which Maryland was responsible. The weight to be given it in the prejudice factor is minimal.

### (2)

### *Anxiety and Concern*

Bailey makes the flat assertion in his brief that "[t]hroughout the two years he lived with the anxiety and concern naturally caused by a pending prosecution." This bald statement, in the circumstances, has little significance.

### (3)

### *Impairment of the Defense*

The contention with regard to the impairment of Bailey's defense focuses on his suggestion that a potential witness was unavailable because of the delay. Again, this amounts to a bald allegation, unsupported by evidence or sufficient proffer. At the hearing on the motion to dismiss, defense counsel said:

> I would also tell Your Honor that [Bailey] has indicated to me that there was a subject by the name of Elliott who was available as a witness in connection with this matter.
>
> That [Bailey], in fact, when he was brought back here asked us to try to run down, who he alleges could have provided testimony that was favorable to him with regard to the nature and extent of his participation in this matter, who apparently no longer exists.

Therefore, defense counsel declared

> prejudice that is demonstrable in terms of the effect that the State's election here has had ... upon his ability to present a defense in terms of this particular case.

The matter was not then pursued further by the defense. As far as we can glean from the record, this is all that was before the court regarding the missing witness at the time the motion to dismiss was denied. In ruling on the motion, the judge, as we interpret the transcription of his comments, indicated only that some prejudice "possibly" arose from the claim as to the witness, but this was "contested by the State." The defense did not identify "Elliott" with any particularity. His given name was not mentioned. His former address was not stated. The nature of his association with Bailey was not indicated. The particulars of his potential testimony were not proffered. There was no suggestion as to why he was no longer available or as to what steps had been taken to find him.

It was not until the trial on the merits that we learn more about Elliott. William L. Moore was the co-defendant the State had persuaded to testify for the prosecution. On his cross-examination it was disclosed that Elliott's given name was Charles. He had been a "buddy" of Moore's for 20 years, a "life-long friend." Moore introduced Elliott to Bailey. Elliott and Bailey became friends. Elliott lived in Baltimore but Moore did not remember Elliott's address or his telephone number or his wife's name or his childrens' names. About 10 days before Bailey was arrested in Maryland, Moore, who was involved with drugs, took Elliott and Bailey along on one of Moore's "[narcotic] user type"

weekends to Miami, Florida. It was elicited, by the defense, not without difficulty, that, according to Moore, Bailey brought into Maryland a half kilo of cocaine on his return from Florida. But Moore's testimony did not demonstrate how Elliott's testimony "could have provided testimony that was favorable to [Bailey] with regard to the nature and extent of [Bailey's] participation in this matter...." [7] In any event, it is obvious that Bailey's defense with respect to the transportation charge was not one whit impaired by the unavailability of Elliott to testify. Despite the lack of Elliott's testimony, the jury found Bailey not guilty of the transportation charge.[8]

■ Thus, we are satisfied that the delay in bringing Bailey to trial did not deny him a speedy trial. On our assessment of the four factors which are applicable in determining whether Bailey had been deprived of this right, we find that, considered together in the light of the circumstances, the assessment does not justify a conclusion that Bailey's speedy trial right was violated. Looking at it from another angle, we believe that the peculiar circumstances of this case, considered in the light of the factors to be assessed, were sufficient to outweigh, in the balance, any prejudice, actual and presumed, arising from the length of the delay.

---

7. It seems that Elliott was once "a probation officer for the Department of Juvenile Services, supervising kids in Baltimore." According to Moore, Elliott was not so employed when they went to Florida, but was a "full-time student at Cable Television Institute." This was disputed by the prosecutor who stated that at the time Moore alleged Elliott went to Florida, Elliott was indeed a probation officer, casting doubt on Moore's assertion that Elliott had actually accompanied Moore and Bailey to Florida and returned with them.

8. Other than the alleged missing witness, Bailey made no other factual claim with respect to the impairment of his defense. He did not, with any specificity, suggest that his incarceration hindered his ability to gather evidence, contact witnesses (other than Elliott), or otherwise prepare his defense. Nor did he suggest that his incarceration resulted in the loss of a lawful job, or disrupted a family life he previously enjoyed, or clouded his well-being with suspicion and hostility.

The answer to the first question presented by the State, whether the Court of Special Appeals erred in concluding that the relevant period should be measured from the original indictment, is that, on our analysis, it does not matter whether the intermediate appellate court erred. The answer to the second question—that even if the dismissal of the original indictment did not toll the relevant period for speedy trial purposes, was Bailey denied his right to a speedy trial—is "no."

## V

No State shall ... deprive any person of ... liberty ... without due process of law....

U.S. Const. amend. XIV, sec. 1. The circuit court judge, in denying the motion to dismiss, said:

[T]he court does not believe that there is any unreasonable, oppressive, capricious denial; or if the situation taken as a whole, such as would deny or indicate [Bailey] has been denied due process.

Bailey raised due process in his cross-petition. He presented the question:

Did the hearing judge err in ruling that [Bailey] was not denied due process of law by reason of the State's nolle prosequi and delays of trial?

The Court of Special Appeals, inasmuch as it held in favor of Bailey on his speedy trial claim, found "it unnecessary to address the alternative claim under the general due process clause." *Bailey v. State, supra,* slip opinion at 1.

▌ The Supreme Court bespoke of the due process clause in *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455. Although it appears that undue preindictment delay may invoke due process, there is clear indication that due process is tied into actual prejudice for the clause to take hold. The Court observed that the defendants in that case

rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the

applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that [defendants] cannot receive a fair trial and to therefore justify the dismissal of the indictment.

*Id.* at 325–326, 92 S.Ct. at 466.

We have seen that, in the balancing process, despite the presumption of prejudice arising from the length of the delay, the scale dipped against Bailey and in favor of the State. We hold that the Due Process Clause was not violated.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ALEX RAY BAILEY.

McAULIFFE, Judge, concurring.

I concur in the Court's opinion. I write separately to express the view that the same result is reached through the application of a different, and appropriate, analysis.

The discontinuance of the original Maryland prosecution by the entry of a *nolle prosequi* was grounded on legitimate State interests, and represented a reasonable exercise of prosecutorial discretion. That action was not taken to harass the defendant, or to avoid a speedy trial problem, or otherwise taken in bad faith. Accordingly, the time that the defendant was not facing criminal charges in this State should not be subjected to a Sixth Amendment speedy trial analysis, but rather should be evaluated in connection with the defendant's Fourteenth Amendment right to due process. *See United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986); *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982); *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

The record supports the trial judge's finding that the prosecutor entered a *nolle prosequi* in the original proceed-

ing, just 16 weeks after it was initiated, for two reasons; and, that both reasons flowed from knowledge the State acquired after it had secured the original indictment. The knowledge, acquired in May, 1986, was that the defendant had been found guilty in South Carolina, in 1985, of trafficking in cocaine, and that the South Carolina authorities were requesting the return of the defendant in order to finalize the conviction by the required imposition of sentence.

The first reason this information was important to the prosecutor is that it, together with other information then being acquired, alerted the Maryland authorities to the fact that the defendant may well have imported cocaine into this State. The prosecutor represented that he needed more time to investigate the matter, and to determine whether the more serious charge of importation should be brought against the defendant. Apparently, the prosecutor also harbored a reasonable belief at that time that he could negotiate a plea with a co-defendant, and thereby obtain that co-defendant's testimony to "bolster" his case against the defendant—a belief which was later confirmed. The potential additional charge of importation of cocaine concededly grew out of the same transaction that had generated the earlier charges. Legitimate interests of justice, economy, and convenience, as well as legitimate concerns about the effect of double jeopardy protections to which the defendant was entitled, militated strongly in favor of a single trial of all charges.

The second reason the after-acquired information was important to the prosecutor was that it suggested the advisability of returning the defendant to South Carolina so that the previous verdict in that State, which had followed a trial *in absentia,* could be made a final judgment of conviction by the imposition of sentence upon the defendant.

At the time of the defendant's trial in South Carolina in 1985, Rule 3 of the Criminal Practice Rules of that State permitted a trial *in absentia.* *See State v. Jackson,* 288 S.C. 94, 341 S.E.2d 375 (1986). Although the trial judge

presiding at a trial *in absentia* in South Carolina will decide upon a sentence if there is a conviction, that sentence is sealed, and is not opened or imposed until the defendant is apprehended and brought before the court. *See State v. Johnson,* 213 S.C. 241, 49 S.E.2d 6 (1948). The law of South Carolina is well settled that there is no final judgment in a criminal case tried *in absentia* until the defendant has been brought before the court and the sentence imposed. *State v. Washington,* 285 S.C. 457, 330 S.E.2d 289 (1985); *State v. Smith,* 276 S.C. 494, 280 S.E.2d 200, 201 (S.C.1981); *Lytle v. Miller,* 157 S.C. 332, 154 S.E. 225 (1930); *State v. Hightower,* 33 S.C. 598, 11 S.E. 579, 580 (1890).

South Carolina had a legitimate interest in having the defendant returned to that State so that a judgment of conviction could be entered. Maryland had a legitimate interest in seeing to it that the judgment in South Carolina was finalized, so that if the defendant were convicted of the later drug charge in this State, he could properly be sentenced as a recidivist. This action cannot be characterized as a stratagem to give an unfair tactical advantage to the State. Rather, it represented the sound exercise of prosecutorial discretion, taken to memorialize the true state of affairs, and to prevent a defendant from escaping the possibility of just punishment for his conduct.[1]

Assuming that the prosecutor might have been able to send the defendant to South Carolina and thereafter secure his return, by agreement with South Carolina,[2] he was not

---

1. Had the prosecutor not cooperated with the South Carolina authorities in having a final judgment entered on their earlier verdict, the defendant probably could have escaped treatment as a recidivist in either state. Maryland could not have based an enhanced sentence on less than a judgment of conviction, and it is unlikely that South Carolina could have increased a sentence already determined. Moreover, the defendant might also, for much the same reasons, have escaped the possibility of either jurisdiction imposing a sentence of imprisonment consecutive to that of the other state.

2. Ordinarily, the transfer of a prisoner, and the right to secure his prompt return, exists by virtue of the Interstate Agreement on Detainers, Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.) Art. 27,

obligated to do so. Two entirely legitimate reasons existed for the termination of the prosecution.

By entering a *nolle prosequi,* the State improved the defendant's position. The defendant did not return to South Carolina with a detainer following him, which might have affected the conditions of his incarceration there. Maryland did not lodge a detainer against the defendant in South Carolina until a year later, 13 days after the Maryland authorities had completed their investigation and secured their new charges against the defendant.

Excluding the period of one year during which the defendant was not under the disability of any charges in Maryland, it is clear that his claim of a denial of the constitutional right to a speedy trial is without merit. Assuming that the 16–week period attributable to the first prosecution is counted, there is no suggestion of delay attributable to the State during that period. Following the initiation of new charges on 28 May 1987, the bulk of the delay was directly attributable to the defendant. He fought extradition, delaying his return to Maryland until 25 November 1987. He was tried within three months of his return to this State.

The one-year period of time that elapsed between charges in Maryland has not been shown to have deprived the defendant of due process. Properly considered, the various periods of delay in this case do not mount up to a denial of any constitutional right.

RODOWSKY, J., joins in this opinion.

COLE, Judge, dissenting:

The Court of Special Appeals held that the relevant period of delay in this case, for speedy trial purposes, should be measured from the original charging document. Therefore, the delay from the indictment until trial was

---

§§ 616A–616R. That agreement applies, however, only when there is outstanding in the demanding state an "untried indictment, information, or complaint" and the prisoner in the sending state has "entered upon a term of imprisonment." Article 27, § 616D(a).

about two years. The intermediate appellate court further held that, under the circumstances of this case, the two-year delay violated Bailey's constitutional right to a speedy trial.

The majority opinion in this Court proceeds upon the assumption that the entire period from the original charging document to the trial should be considered in determining whether Bailey was denied his right to a speedy trial. The majority, however, concludes that the delay of two years did not encroach upon Bailey's constitutional rights. I think it did.

I agree with both the Court of Special Appeals and the majority that the relevant period in this case should be measured from the initial charging document. Essentially for reasons set forth in the Court of Special Appeals' opinion, and quoted at pp. 405–409 of the majority opinion, I agree with the Court of Special Appeals that Bailey was denied his constitutional right to a speedy trial. The majority's contrary conclusion is, in my view, inconsistent with several of this Court's decisions. *See, e.g., Brady v. State,* 291 Md. 261, 434 A.2d 574 (1981); *Brady v. State,* 288 Md. 61, 415 A.2d 1126 (1980); *Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975).

I would affirm the judgment of the Court of Special Appeals.

Judge ADKINS has authorized me to state that he joins in this opinion.