## DYTHIAN THEOLAEF ROBESON *v.* STATE OF MARYLAND

[No. 41, September Term, 1978.]

*Decided July 23, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE and COLE, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *George E. Burns, Jr., Assistant Public Defender,* on the brief, for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

We granted certiorari in this criminal case to consider whether the trial court erred in admitting, in the course of cross-examination, certain evidence of the defendant's silence between the time of the crime and the time of his arrest, in light of the principles set forth in *Doyle v. Ohio,* 426 U. S. 610, 96 S. Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U. S. 171, 95 S. Ct. 2133, 45 L.Ed.2d 99 (1975); and *Younie v. State,* 272 Md. 233, 322 A. 2d 211 (1974). *See also State v. Raithel,* 285 Md. 478, 404 A. 2d 264 (1979). This issue has not previously been considered by this Court, and apparently there has been some divergence among cases in other

jurisdictions.[1] However, after hearing this case we have concluded that we need not, and therefore do not, decide whether the admission of the testimony concerning pre-arrest silence was error. This is because the admission of the testimony was, under the circumstances, harmless beyond a reasonable doubt. Consequently, the admissibility during cross-examination of testimony regarding the defendant's pre-arrest silence remains an open question in this State.

The defendant Robeson was convicted by a jury in the Criminal Court of Baltimore of the first degree murder of Stilton Jones, of assault with intent to murder Harry Johnson, and of two counts charging the use of a handgun in the commission of a crime of violence. During the trial, the testimony of two State witnesses directly supported the prosecution's version that the defendant shot both victims with a handgun after a dispute over narcotics. Thereafter, the defendant testified on his own behalf, denied shooting either victim, and gave a totally different account of what happened. Consequently, the defendant's credibility was a key issue. During cross-examination of the defendant, the prosecuting attorney asked him, with regard to the time period after the crime but before his arrest, the following:

> "Q. You didn't tell the police what happened. Did you go down to the police and tell them you had nothing to do —
> [Defendant's Attorney]: I would object, your Honor.
> The Court: I think that is a perfectly proper question. I will take the answer.
> Q. Did you ever tell the police what happened?
> A. No, I didn't. I told them what I knew after, you know, after —
> The Court: You didn't tell them voluntarily; did you?
> A. No, I didn't.
> The Court: That is what the State wants to know.

---

1. *Compare, e.g.,* Ester v. United States, 253 A. 2d 537 (D.C. App. 1969), *with* United States v. Henderson, 565 F. 2d 900 (5th Cir. 1978); People v. Sheperd, 551 P.2d 210 (Colo.App. 1976); Weiss v. State, 341 So.2d 528 (Fla.App. 1977).

> Q. You didn't call the police and tell them that you were innocent?
>
> A. No, I didn't."

On his appeal to the Court of Special Appeals, the defendant argued, *inter alia,* that he had a Fifth Amendment right to pre-arrest silence, and the admission of the above-quoted testimony over his objection was in violation of that constitutional right. The Court of Special Appeals rejected the contention and affirmed, *Robeson v. State,* 39 Md. App. 365, 386 A. 2d 795 (1978).

The defendant petitioned this Court for a writ of certiorari, raising solely the question of whether the trial court erred in admitting evidence of his pre-arrest silence. The State filed an answer and conditional cross-petition for a writ of certiorari, arguing that certiorari should be denied because the testimony was clearly admissible and, even if not admissible, the error was harmless. The State requested that, if the defendant's petition were granted, we should grant the State's conditional cross-petition to consider the harmless error question. The defendant then filed a motion ne recipiatur, requesting that we not receive that portion of the State's response constituting a conditional cross-petition raising the issue of harmless error. The defendant pointed out that neither side had raised the harmless error issue in the Court of Special Appeals and that court had not considered the issue sua sponte. The defendant contended that it would be improper for this Court on certiorari to consider a question that had never previously been raised in a case. We granted both the petition and the conditional cross-petition, and we deferred ruling on the motion ne recipiatur.

(1)

Preliminarily, we reject the defendant's request that the harmless error issue not be considered. It is true of course, as a general principle, that an appellate court will not ordinarily consider an issue that has not previously been raised, and this applies to an appellate court exercising certiorari jurisdiction. *See, e.g., United States v. Lovasco,* 431 U. S. 783, 788 n. 7, 97 S. Ct. 2044, 2048 n. 7, 52 L.Ed.2d 752

(1977). *See also* Maryland Rule 885. However, there are well-recognized exceptions to this general principle. One exception is that where the record in a case adequately demonstrates that the decision of the trial court was correct, although on a ground not relied upon by the trial court and perhaps not even raised by the parties, an appellate court will affirm. In other words, a trial court's decision may be correct although for a different reason than relied on by that court. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Ludwig,* 426 U. S. 479, 96 S. Ct. 2158, 48 L.Ed.2d 784 (1976); *Dandridge v. Williams,* 397 U. S. 471, 475 n. 6, 90 S. Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Jaffke v. Dunham,* 352 U. S. 280, 77 S. Ct. 307, 308, 1 L.Ed.2d 314 (1957); *Brown v. Allen,* 344 U. S. 443, 73 S. Ct. 397, 408, 97 L. Ed. 469 (1953); *United States v. American Ry. Express Co.,* 265 U. S. 425, 435, 44 S. Ct. 560, 68 L. Ed. 1087 (1924); *Davis v. State,* 285 Md. 19, 400 A. 2d 406 (1979); *St. Comm'n on Human Rel. v. Amecom Div.,* 278 Md. 120, 123 n. 2, 360 A. 2d 1 (1976); *Aubinoe v. Lewis,* 250 Md. 645, 649, 244 A. 2d 879 (1968); *Read Drug v. Colwill Constr.,* 250 Md. 406, 423, 243 A. 2d 548 (1968); *Schriver v. Schriver,* 185 Md. 227, 245, 44 A. 2d 479 (1945). Considerations of judicial economy justify the policy of upholding a trial court decision which was correct although on a different ground than relied upon. This was explained by the Supreme Court in *Securities and Exchange Com. v. Chenery Corp.,* 318 U. S. 80, 88, 63 S. Ct. 454, 87 L. Ed. 626 (1943): "It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate."

We recognize that this Court will not ordinarily consider an issue which was not raised in the petition for a writ of certiorari, in a cross-petition or in the Court's order granting certiorari. *First Nat'l Bank v. Fid. & Dep. Co.,* 283 Md. 228, 230-231, 389 A. 2d 359 (1978); *Coleman v. State,* 281 Md. 538, 547, 380 A. 2d 49 (1977); *Mazor v. State, Dep't of Correction,* 279 Md. 355, 370 n. 8, 369 A. 2d 82 (1977); *Dempsey v. State,* 277 Md. 134, 142-143, 355 A. 2d 455 (1976); *Walston v. Sun Cab Co.,* 267 Md. 559, 569, 298 A. 2d 391 (1973); Rule 813.

Moreover, in some of these cases, we applied this principle and refused to consider an argument that the decision of the trial court should be affirmed on a ground not raised in the petition, a cross-petition or the Court's order granting certiorari. And with respect to the question of harmless error specifically, we stated in *Coleman v. State, supra,* 281 Md. at 547: "The State did not, however, file a cross-petition for certiorari raising the harmless error issue, and we therefore will not consider it."

In arguing that we should not consider the matter of harmless error in the present case, the defendant relies upon several of the above-cited cases. Nevertheless, such reliance is obviously misplaced. In all of those cases, there was a failure to raise the issue in the petition for certiorari or in the cross-petition. In the case at bar, the State did raise the harmless error question in a conditional cross-petition, and we granted the cross-petition.

The principle that a court exercising discretionary certiorari jurisdiction will ordinarily consider only those issues presented in the certiorari petition, a cross-petition or the court's order granting certiorari, is based upon the nature of such discretionary jurisdiction. As observed in *Walston v. Sun Cab Co., supra,* 267 Md. at 569, "the statute [delineating this Court's certiorari jurisdiction] contemplated that the desirability and public interest involved in granting certiorari are shown to us by petition and the matters presented to us by petition should logically be those considered by us unless we limit those matters for consideration in our order granting certiorari." However, as further pointed out in *Walston, id.* at 567-568: "In short, we have treated the [certiorari] procedure as affording a discretionary appeal; and when the discretion to grant the petition is exercised, the case is treated like every other *appeal.*" Since the State presented the harmless error issue to us in a cross-petition, and as we exercised our discretion to grant the cross-petition, with regard to that issue "the case is treated like every other *appeal.*" And, as in every ordinary direct appeal, the rule is well established that an appellate court will normally affirm a trial court on a ground adequately shown by the record,

even though that ground was not the one relied upon by the trial court. Consequently the motion ne recipiatur will be denied.

### (2)

If we assume for the purposes of this case that the trial court erroneously overruled the objection to a question concerning the defendant's pre-arrest silence, our review of the record convinces us beyond a reasonable doubt that the error was harmless. *See Chapman v. California,* 386 U. S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); *Dorsey v. State,* 276 Md. 638, 659, 350 A. 2d 665 (1976).

The entire relevant portion of the transcript setting forth the cross-examination of the defendant concerning that period of time between the crime and his arrest, is as follows (emphasis supplied):

"Q. [by assistant state's attorney] Did you move out of your house?
A. [by appellant] Yes, I did.
Q. You were hiding from the police, weren't you?
A. Not really hiding.
Q. Well, you knew a warrant was out for your arrest; didn't you?
A. Yes, I did.
Q. *You were hiding?*
A. *I was.*
Q. Had you your suitcases there?
A. Yes, I did.
Q. You had all your clothes there?
A. Yes, I did.
Q. In a separate room; didn't you?
A. From hers.
Q. In her house?
A. Yes, I did.
Q. There was a bed in that room, wasn't there?
A. Yes, it was.
Q. *You were hiding from the police?*
A. I was staying there temporarily until, you know, I could hear the, you know, the results of this, you

know. Because I knew I didn't do it, and I wasn't the only one that they said did it at the time, because the police come into the restaurant and said they had a warrant for someone else for it. And then *I heard they had a warrant for me* for a period. *And I didn't want to get arrested for no homicide I know I didn't do it. So, I did, you know, leave my mother's house.*

Q. Until January 3rd, *until you were arrested; right?*

A. *Yes.*

Q. *You didn't tell the police what happened. Did you go down to the police and tell them you had nothing to do —*

MR. SUTLEY [defense attorney]: *I would object, your Honor.*

THE COURT: *I think that is a perfectly proper question.* I will take the answer.

Q. [by assistant state's attorney] *Did you ever tell the police what happened?*

A. *No, I didn't.* I told them what I knew after, you know, after —

THE COURT: You didn't tell them voluntarily; did you?

THE WITNESS: No, I didn't.

THE COURT: That is what the State wants to know.

Q. [by assistant state's attorney] You didn't call the police and tell them that you were innocent?

A. No, I didn't.

Q. You didn't know why the warrant was out for your arrest?

A. No, I didn't.

Q. *You were with Rose Munford, you didn't tell them that?*

A. *No, I didn't.*

Q. That you were having tea?

A. No, I didn't.

Q. You didn't tell the police that; did you?

A. No, I didn't.

Q. *Why not?*

A. *I didn't tell them that until after I was apprehended. The reason I didn't call before was because, you know, I knew I would get locked up.*

Q. Because you did it?

A. No, no, no.

Q. Then why didn't you tell them?

A. Why don't I call voluntarily?

Q. And tell them?

A. Because, you know, *it was Christmas, a holiday. I didn't want to be locked up* — I would have been locked up any way.

Q. Because you committed this crime?

A. Not because I committed the crime.

Q. Why did you know you would be locked up?

A. Because I know the procedure you go through.

Q. Yes, when you commit a crime they arrest you?

A. No, that's not the reason.

Q. Well, *what is the reason; I'm asking you?*

A. *Because I didn't want to be locked up.*

Q. *During the Christmas holidays?*

A. *Right.*

Q. But the Christmas holidays were over.

A. The New Year's.

Q. Well, you were out for New Year's; weren't you?

A. Yes, I was.

Q. *Did you call the police on January 2nd?*

A. *No, I didn't.*

Q. January 3rd?

A. No, that was the day I got locked up. That was the day they caught me."

Prior to the particular question at issue, the defendant admitted that he knew that there was a warrant out for his arrest, that he was hiding from the police, and that he was hiding because he did not want to get arrested. There was no objection to this testimony. Then the question concerning pre-arrest silence, to which there was an objection, was asked. However, the question was in the context of whether the defendant went "down to the police" to tell them that he had nothing to do with the crime. If the defendant were hiding

throughout this period so that he would not be arrested, as he had previously testified without objection, it is obvious that he did not *"go down to the police* and tell them" anything. In light of the context in which it was asked, the question to which objection was made added nothing to what had already been admitted. Thus, it did not harm the defendant beyond whatever harm may have resulted from the prior questioning.

After the allegedly objectionable question, the defendant testified in response to more questions by the State, without further objection by defense counsel, that he did not tell the police with whom he was staying, that the reason he did not call the police was because "I knew I would get locked up," that he did not tell them anything because he did not want to be incarcerated over the Christmas and New Year's holidays, and that he did not call the police on January 2nd or before his arrest on January 3rd. These later questions in substance covered the same matter as the earlier question which was objected to. The law in this State is settled that where a witness later gives testimony, *without objection,* which is to the same effect as earlier testimony to which an objection was overruled, any error in the earlier ruling is harmless. *See, e.g., S & S Bldg. Corp. v. Fidelity Storage,* 270 Md. 184, 191, 310 A. 2d 778 (1973); *Blinder v. Monaghan,* 171 Md. 77, 85, 188 A. 31 (1936); *Calder v. Levi,* 168 Md. 260, 265, 177 A. 392 (1935).

In light of the defendant's responses to other questions which were not deemed objectionable, both before and after the question to which objection was taken, any error in overruling that objection was clearly not prejudicial.

*Judgment affirmed; petitioner to pay costs.*