591 A.2d 524

**Paul Anthony WILSON**

v.

**STATE of Maryland.**

**No. 815, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

June 26, 1991.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Submitted before ALPERT, ROSALYN B. BELL and FISCHER, JJ.

FISCHER, Judge.

Appellant, Paul Anthony Wilson, appeals from a conviction and sentence for felony murder rendered by the Circuit Court for Prince George's County (Levin, J.).

On October 13, 1987, the body of Karen Goshen was discovered in the laundry room of an apartment building located at 1400 Nova Avenue in Prince George's County. Testimony at trial indicated that Ms. Goshen had died from

strangulation. Dr. Daniel Garner testified that DNA obtained from appellant's blood matched DNA obtained from semen found in Ms. Goshen's underpants. FBI Agent Gary Kanaski testified that a crime scene shoe print recovered from between Ms. Goshen's legs was similar to a shoe recovered from appellant.

Testimony of witnesses indicated that Ms. Goshen, on the morning of October 13, 1987, approached a group of young men and offered to trade a walkman radio and a watch for cocaine. Testimony also indicated that appellant, Ms. Goshen and a second male left 1410 Nova Avenue and walked in the direction of 1400 Nova Avenue. Tyrone Conley testified that appellant and Goshen went in the direction of the laundry room, and Conley subsequently saw someone in the laundry room smoking what he assumed was cocaine.

Appellant raises four issues for our consideration:

I. Did the trial court err in refusing to propound a requested *voir dire* question?

II. Did the trial court err in denying appellant's motion to suppress certain evidence?

III. Was appellant denied a fair trial because of the admission of evidence of other crimes?

IV. Did the trial court err in admitting DNA related evidence?

## I.

Did the trial court err in refusing to propound a requested *voir dire* question?

One of the *voir dire* questions requested was No. 16 which states:

16. The defendant in this case is a black male and the alleged victim is a white female. This case involves allegations of rape or attempted rape, as well as the use of procurement of drugs and a strangulation homicide. Would these facts or allegations be of such nature that you feel you could not sit as a juror in such a case and

render an impartial verdict only on the facts presented to you in this trial?

The Assistant State's Attorney objected saying:

Your Honor, with regard to defense question number 16, I don't have any problem with it except for the part that states, 'The defendant in this case is a black male and the victim is a white female.' I don't like to interject races into the case, the other portion of the question I have no problem with....

Upon asking the *voir dire* questions, the trial judge, in lieu of the requested question, inquired:

As I indicated to you before, this case involves allegations of a sex offense, it involves allegations of drugs, would that prejudice somebody so that they could not fairly and impartially decide this case based solely on evidence they're going to hear in this courtroom?

During the course of the jury selection, defense counsel used thirteen of his allotted twenty strikes. At the conclusion of the jury selection while the jurors were still present, the Court stated, "All right, Mr. Niland, there are 12 jurors sitting there, you satisfied?" Mr. Niland replied, "Defense is satisfied, Your Honor." Alternates were then selected and the remaining jurors were excused. The Court then proceeded to hear motions. As his second motion, Mr. Niland stated, "Next, Your Honor, I'm going to except to the court's choosing not to give all of defendant's voir dire request number 16, as the State had previously objected." The trial judge replied, "All right. Anything else?" This, apparently, sufficed as a denial as the court proceeded to other motions. At the conclusion of the motions hearing, the jury was brought in and sworn.

■ While not a model of clarity, we believe question 16, as framed, was intended to discern, among other things, whether any member of the jury panel would entertain prejudice against a black male accused of raping and murdering a white female. Clearly, the question, or one of similar import, should have been asked. In *Ham v. South*

*Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), a black male was charged with marijuana possession. His defense was that he was the target of a frame-up because of his involvement in civil rights activities. The trial judge denied his request to interrogate the veniremen with respect to racial prejudice. The Supreme Court noted that there was no constitutional requirement demanding that the jurors be asked specific questions about racial prejudice. Nonetheless, the Supreme Court reversed the conviction, "[s]ince one of the purposes of the Due Process Clause of the Fourteenth Amendment is to insure 'these essential demands of fairness,' and since a principal purpose of the adoption of the Fourteenth Amendment was to 'prohibit the State from invidiously discriminating on the basis of race.' " *Ham,* 409 U.S. at 526–527, 93 S.Ct. at 850–851 (citations omitted). Thus, the only way to discover whether potential jurors held any racial bias against Ham for his civil rights involvement was to ask the jurors on *voir dire.*

The rule in Maryland is identical. As explained in *Thornton v. State,* 31 Md.App. 205, 216, 355 A.2d 767 (1975), "Maryland, like the Supreme Court, holds that whatever the ethnic background of the accused, he or she is not entitled to promiscuously probe for racial prejudice absent circumstances in the case warranting such inquiry." One such circumstance was enunciated in *Holmes v. State,* 65 Md. App. 428, 501 A.2d 76 (1985), *rev'd on other grounds,* 310 Md. 260, 528 A.2d 1279 (1987), wherein Judge Robert M. Bell, writing for this Court,[1] thoroughly analyzed the factual situation requiring a *voir dire* question designed to elicit prejudicial beliefs or attitudes. Judge Bell opined, "Our review of the cases causes us to conclude that, in a criminal case, prejudice may be a factor because of the facts of the case when the complainant and the witnesses for the State are of a different race than the defendant, and the crime

---

1. Judge Bell has subsequently been appointed to the Court of Appeals of Maryland.

involves victimization of another person and the use of violence." *Holmes,* 65 Md.App. at 438–439, 528 A.2d 1279.

■ The case now under consideration is similar to *Holmes* in that it appears, as in Holmes, the objection to the failure to give the requested instruction was waived. In *Trimble v. State,* 321 Md. 248, 257, 582 A.2d 794 (1990), the Court of Appeals stated, "Defense counsel's declaration of his satisfaction with the jury was an affirmative acceptance of those jurors who had been selected. Thus, he may not object now."

Defense counsel did object to the court's failure to give the requested instruction prior to the jury being sworn. He waited, however, until after he had announced acceptance of the jury and the remaining jurors were excused. We hold that his belated objection came too late. Since the jurors who had undergone *voir dire* on the case had been excused, it would have been necessary at that point to begin the entire process anew. Ideally, the objection should have been articulated to the trial judge following the *voir dire* and prior to jury selection. Even an objection lodged after the jury selection, but while the remaining panel was still available, could have been managed by the trial judge. But, certainly, it would be unreasonable to permit the objection after the jury was accepted and the remaining panel excused. We hold, therefore, that appellant's objection to the trial court's *voir dire* examination was waived.

## II.

Did the trial court err in denying appellant's motion to suppress certain evidence?

■ Appellant objected to the introduction into evidence of one of his tennis shoes. In this connection, Detective Price testified:

A. I entered the interview room again with Mr. Wilson, and this was approximately 6:00 a.m. I asked him to lift his foot up a minute.

Q. Was he wearing tennis shoes?

A. He was wearing tennis shoes.

Q. Was it a tennis shoe lift?

A. Print, yes, it was. I looked at them, and they looked similar so I told him—I said, 'How about taking the shoe off a minute for me, please?' And he did so.

Q. And what happened after he took the shoe off?

A. When he took the shoe off, I held the print up next to the shoe, and I looked at it, and I showed it to him, and I said, 'Look. Ray Charles could see that these are the same two, that they are a match,' and it was.

Q. What did he do when you confronted him with that?

A. He then admitted that he was in the laundry room at 1400 Nova Avenue.

Q. And that was where the body of Karen Goshen was found?

A. That is correct.

The shoe was then seized by Detective Price without the benefit of a warrant. Appellant avers that the seizure of the shoe and the admission of Detective Price's testimony as to appellant's statement that he was at the crime scene was improper.

It is clear that appellant consented to the removal of his shoe. After seeing the comparison between his shoe and the crime scene shoe print, appellant admitted that he had been in the laundry room. Since he consented to the seizure of his shoe, appellant was not deprived of his Fourth Amendment rights. *See Gamble v. State*, 318 Md. 120, 129, 567 A.2d 95 (1989). Even if appellant had not consented, the seizure of the shoe would have been permissible as the result of a search incident to a lawful arrest or as a search during administrative processing at the jail. *See United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Since the seizure of the shoe was proper, the court did not err in admitting appellant's statement which resulted from the comparison between appellant's shoe and the shoe print.

■ Appellant next complains that the seizure of a blood sample used in DNA testing was illegal for the reason that the search warrant used to obtain the blood was illegally obtained. Appellant avers that Detective White, in applying for the warrant, made material omissions in the affidavit used to support the warrant. Specifically, appellant complains that Detective White failed to include information inconsistent with the State's version of events, in that she included inculpatory evidence but failed to include exculpatory evidence favorable to appellant.

Appellant relies upon *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks*, 438 U.S. at 155, 98 S.Ct. at 2676, the Supreme Court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the warrant affidavit and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

In the case at bar, a *Franks* hearing was held, in which appellant was able to question Corporal Nancy White, the officer who applied for the warrant. Appellant alleges that the mere omission of facts favorable to his position constituted an act of deliberate falsehood. In *Yeagy v. State*, 63 Md.App. 1, 8, 491 A.2d 1199 (1985), Judge Rosalyn Bell, writing for this Court, pointed out that many Federal courts have applied the *Franks* rationale to omissions. The omission, however, must be made "intentionally or with reckless disregard for accuracy; a negligent or innocent mistake

does not suffice." *Yeagy*, 63 Md.App. at 8, 491 A.2d 1199. Detective White testified that she excluded the conclusion of the FBI examiner that the hairs found at the scene and on the body were not those of appellant. The affiant further testified that she did not include appellant's denials that he committed the offense nor did she mention the evidence that another man was with Ms. Goshen near the time of her death. The detective also excluded an FBI report which stated that there was no conclusive match between the shoe print found at the crime scene and the appellant's shoe.

Detective White, however, also omitted a great deal of inculpatory information from her affidavit. She excluded an FBI report which concluded that the shoe print matched the size and design of the appellant's shoe. She did not mention that the appellant's blood was compared to semen found in the victim's pubic hair, and that this comparison revealed a consistency for PGM subgroup and ABH blood group substances. In fact, all FBI reports were excluded from the affidavit. Furthermore, Detective White testified that she did not purposely mislead the magistrate in her preparation of the affidavit.

Based on this evidence, the trial court concluded that any omissions from the affidavit were not motivated by a reckless disregard for accuracy. As a result, the trial court ruled that probable cause for the issuance of the warrant was present and the warrant properly issued. It follows, therefore, that the trial court was not clearly erroneous in finding that there was no basis for suppression of the evidence stemming from the blood test.

Appellant further complains that, during his interview with Detective White, appellant indicated he was not inclined to answer further questions. Despite this, appellant was subsequently questioned by Detective Price. Appellant's contention appears to be a misconception of what actually occurred. Detective White testified that she asked appellant to put in writing his admission that he was in the laundry room and saw Ms. Goshen's body, but appellant

refused. Appellant's position rests upon his assertion that the trial judge found that appellant indicated that he did not wish to answer further questions. What actually transpired with respect to the trial judge is somewhat different than appellant's version. The judge stated, "I understand what your point is. He said first he signs a paper that says I am willing to answer some questions, and then came a time where he said I am not willing to answer any more questions."

When considered in context, the judge's statement is not a finding that appellant's version of what occurred is the correct one, rather, it is clear that the judge is merely stating defense counsel's position in order to assure defense counsel that the trial judge understood the issue under discussion. After a full argument on counsel's respective positions, the trial judge stated, "I don't have any problem with what you have said except he could have cut it off at any time. That's why I am going to deny the motions to suppress any and all statements. The minute he said I want a lawyer it was cut off." The clear message in the foregoing statement is that the trial judge agreed with the legal principles put forth by defense counsel, but found as a matter of fact that questioning ceased upon appellant's request. It follows, therefore, that appellant's statements to Detective Price were properly admitted, since the trial judge found Detective White's version of what occurred more credible than appellant's version of what occurred.

### III.

Did the trial court err in admitting evidence of other crimes?

 In the course of Detective White's testimony the following transpired:

Q. And after he denied knowing the victim, Karen Goshen, what happened next?

A. We continued to talk. I told Mr. Wilson that I was aware of his arrest record, which—

In response to an objection by defense counsel, the court admonished the jurors to strike from their minds the most recent question and answer given by Officer White. The jury is, of course, presumed to follow the court's instructions. *Crutchfield v. State,* 79 Md.App. 101, 108–109, 555 A.2d 1070, *rev'd on other grounds,* 318 Md. 200, 567 A.2d 449 (1989). The decision whether to grant a mistrial is left to the exercise of the sound discretion of the trial judge. *State v. Crutchfield,* 318 Md. 200, 567 A.2d 449 (1989). We perceive no abuse of that discretion.

■ Appellant's second complaint in this area is that the trial judge erred in permitting Detective Price to testify that appellant had told him that "he had gone to 1400 [Nova Avenue] with Gary and smoked ... cocaine." This evidence was not admitted to show appellant's criminal propensity; rather, it was admitted to show that he committed the crime for which he was being tried. If the admission of this testimony was in error, the error was harmless beyond a reasonable doubt. Tyrone Conley, called to testify for appellant, stated that he saw appellant on October 13, 1987 with others smoking cocaine in the "laundrymat." The introduction of later testimony, without objection, to the same effect as the earlier objected to testimony, renders any error in the earlier ruling harmless. *Robeson v. State,* 285 Md. 498, 507, 403 A.2d 1221, *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1979).

## IV.

Did the trial court err in admitting DNA evidence?

Appellant mounts a varied attack on the admission of DNA evidence by the trial court. Initially, appellant avers that Md.Cts. & Jud.Proc.Code Ann. § 10–915 (Supp.1984) is unconstitutionally vague and overbroad. The State argues that appellant failed to preserve his objection to the constitutionality of the Act by failing to object when the State's forensic chemist testified that the DNA pattern from Wilson's blood matched the semen sample obtained from the

victim. We agree with the State's position. Under Maryland Rule 4–323(a), "An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived."

■ Defense counsel's oral motion *in limine* is insufficient to preserve the issue for our review. In his motion *in limine,* counsel for the appellant objected to the introduction of DNA evidence, citing its "scientific unreliability." During the pretrial hearing, the judge neither admitted nor denied the evidence. Instead, the case was reset for trial and the court announced that "we will deal with [the admissibility of DNA evidence] before the trial." The issue, however, was not addressed before trial. At trial the State's forensic chemist testified that he relied on the DNA evidence in order to implicate the appellant. This testimony was admitted without objection at the time it was offered. Under *Prout v. State,* 311 Md. 348, 356, 535 A.2d 445 (1988), "If the trial judge admits the questionable evidence, the party who made the motion [*in limine*] ordinarily must object at the time the evidence is actually offered to preserve his objection for appellate review." Furthermore, "a motion *in limine* is not the equivalent of a continuing objection." *Beghtol v. Michael,* 80 Md.App. 387, 393, 564 A.2d 82 (1989), *cert. denied,* 318 Md. 514, 569 A.2d 643 (1990). As a result, we hold that defense counsel's mere motion *in limine* did not obviate the necessity for objection when the damaging evidence was offered.

■ At trial, the State's first witness was Corporal Nancy White through whom the State attempted to introduce statements made by the appellant. Defense counsel objected, and the following bench conference ensued:

[DEFENSE COUNSEL]: I just want to make it clear that I am going to have a continuing objection.

THE COURT: That's what I was going to do.

DEFENSE COUNSEL: I want to make it clear that I still want to maintain the following bases, I want to maintain the reasons that I set out in the motions hearings.

THE COURT: All right.

[DEFENSE COUNSEL]: I also want to say that I want to maintain the position that I raised in the motions in limine with respect to the fact that what's contained in the statement do not constitute admissions.

THE COURT: All right.

[DEFENSE COUNSEL]: Okay.

THE COURT: Anything else?

[DEFENSE COUNSEL]: And I don't want to object to every answer.

THE COURT: That's why I brought you up, you'll have a continuing objection to all the—

[STATE'S ATTORNEY]: Statements.

THE COURT: All the statements. That we have more police officers.

[STATE'S ATTORNEY]: We have more police officers.

[DEFENSE COUNSEL]: Well, each time I am going to object at least once when he offers each item.

THE COURT: Fine.

[DEFENSE COUNSEL]: But I won't object to each question.

THE COURT: Right. Okay.

 Under Maryland Rule 4–323(b), "For purposes of review by the trial court or on appeal, the continuing objection is effective only as to questions clearly within its scope." The scope of this continuing objection is confined to matters relevant to the appellant's statements. Defense counsel's broad and elusive comment, "I want to maintain the reasons that I set out in the motions hearings" was insufficient to inform the court of the possibility that the defense was addressing the admissibility of DNA evidence, especially when the discussion at hand focused on the statements. The motions hearings themselves substantially addressed whether to suppress statements and a search

warrant. The hearings relegated the DNA issue to a strictly cursory and limited discussion. In addition, any proper objection made by the defense regarding the chemist's DNA related testimony was waived by defense counsel's failure to object the second time the chemist testified on direct examination. *Robeson*, 285 Md. at 506, 403 A.2d 1221. For these reasons, we rule that the trial court properly admitted DNA related evidence.

Accordingly, we rule that appellant's objection to the trial court's refusal to propound a requested *voir dire* question came too late. The trial court properly denied appellant's motion to suppress certain evidence. Appellant was not denied a fair trial because of the admission of evidence of other crimes. Finally, the trial court properly admitted DNA related evidence.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.